UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SHIKEAL JENKINS, and
MCKENZIE MOE,
Individually and on behalf of all
others similarly situated,

     Plaintiff,

vs.

MORLEY COMPANIES,
INCORPORATED,

     Defendant.

Case No. 1:20-cv-11921

Hon. Thomas L. Ludington

Magistrate Judge Patricia T. Morris

---

Jennifer McManus (P65976)
FAGAN MCMANUS, P.C.
Attorneys for Plaintiffs
25892 Woodward Avenue
Royal Oak, Michigan
(248) 542-6300
jmcmanus@faganlaw.com

Clif Alexander
Austin W. Anderson
ANDERSON ALEXANDER, PLLC
Attorneys for Plaintiffs
819 N. Upper Broadway
Corpus Christi, Texas 78401
(361) 452-1279
clif@a2xlaw.com
austin@a2xlaw.com

---

## PLAINTIFFS' UNOPPOSED MOTION FOR SETTLEMENT APPROVAL AND DISMISSAL WITH PREJUDICE

Plaintiffs Shikeal Jenkins and McKenzie Moe, by and through their undersigned counsel, individually and on behalf of all others similarly situated ("Plaintiffs"), file this Unopposed Motion for Settlement Approval and Dismissal with Prejudice ("Motion") seeking the Court's approval of the Settlement, specifically, the Settlement Agreement, attached hereto as Exhibit A, along with all

1

exhibits thereto ("Settlement Agreement"). Approval of the proposed Settlement Agreement is further supported by the attached Memorandum of Law. Plaintiffs further state:

1.     A *bona fide* dispute exists between Plaintiffs and Defendant.

2.     The terms and conditions of the proposed settlement between Plaintiffs and Defendant, as defined and described in the Settlement Agreement, are fair, reasonable, and adequate.

3.     The form of the Notice of Settlement and the method of disseminating this information to the Collective, as described in the Settlement Agreement are fair, reasonable and adequate to the Collective.

4.     That the method of allocating a settlement award to each member of the Settlement Class is fair, reasonable, and adequate.

5.     That the attorneys' fees and costs are fair, reasonable, and adequate.

6.     Defendant does not oppose the relief requested herein.

Dated: January 28, 2021                          Respectfully submitted,

*/s/ Jennifer McManus*                           */s/ Austin W. Anderson*
Jennifer McManus (P65976)                        Clif Alexander
FAGAN MCMANUS, P.C.                               Austin W. Anderson
Attorneys for Plaintiffs                         ANDERSON ALEXANDER, PLLC
25892 Woodward Avenue                            Attorneys for Plaintiffs
Royal Oak, Michigan                              819 N. Upper Broadway
(248) 542-6300                                   Corpus Christi, Texas 78401
jmcmanus@faganlaw.com                            (361) 452-1279
                                                 clif@a2xlaw.com
                                                 austin@a2xlaw.com


## **CERTIFICATE OF SERVICE**

I hereby certify that on January 28, 2021, a copy of the foregoing document
was filed electronically in the United States District Court for the Eastern District of
Michigan. Notice of this filing will be sent to all parties by operation of the Court's
electronic filing system. Parties may access this filing through the Court's system.


*/s/ Austin W. Anderson*
Austin W. Anderson

SHIKEAL JENKINS, and
MCKENZIE MOE,
Individually and on behalf of all
others similarly situated,

      Plaintiff,

vs.

MORLEY COMPANIES,
INCORPORATED,

      Defendant.

Case No. 1:20-cv-11921

Hon. Thomas L. Ludington

Magistrate Judge Patricia T. Morris

## BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR SETTLEMENT APPROVAL AND DISMISSAL WITH PREJUDICE

## I.
## INTRODUCTION

This hybrid wage and hour collective/class action lawsuit was filed by Shikeal Jenkins and McKenzie Moe, individually and on behalf of all other hourly Call-Center employees who were employed by Morley Companies, Incorporated ("Morley" or "Defendant"), anywhere in the United States, at any time from July 16, 2017 through the final disposition of this matter. *See* ECF No. 1. Plaintiffs alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201–19 and the South Carolina Payment of Wages Act, South Carolina Code Ann. § 41-10-10, *et seq.* ("SCPWA" or "South Carolina Act"). Although Defendant denies any and

all liability, the parties have agreed to a settlement, the terms of which are defined and described in the Settlement Agreement and Exhibits.

Plaintiffs, individually and on behalf of all others similarly situated, and Defendant Morley have agreed, subject to Court approval, to resolve these wage and hour claims on a collective-wide basis. The Settlement satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it resolves a *bona fide* dispute, was reached after contested litigation, and was the result of arms'-length settlement negotiations conducted by Michael L. Russel, a well-respected wage and hour mediator.

Accordingly, Plaintiffs respectfully request that the Court issue an order: (1) finding that the Settlement Agreement attached as Exhibit A is a fair and reasonable resolution of a *bona fide* dispute; (2); approving the FLSA Notice of Collective Action Settlement and Claim Form ("Notice Packet"), attached as Exhibits B and C to the Settlement Agreement; (3) approving the method of dissemination for the Notice Packet; (4) approving the service awards for Named Plaintiffs Jenkins and Moe, and (5) approving the requested attorneys' fees and expenses.

## II.
## PERTINENT FACTS

Morley is a customer engagement and contact center that provides customer services, technical support, and sales and marketing support to their business

clients.[1] Since Plaintiffs filed this lawsuit, approximately 607 hourly Call-Center Employees have opted into this litigation.

Plaintiffs and Defendant ("the Parties") engaged in an informal exchange of information to facilitate settlement resolution. In addition to reviewing the employment information provided by Defendant, Plaintiffs' Counsel also reviewed hundreds documents provided by Plaintiffs and the Opt-In Plaintiffs and conducted extensive interviews with the vast majority of the 607 Plaintiffs and Opt-In Plaintiffs prior to mediation. After a full review of the information obtained and open and full debate over the legal and factual issues, and after engaging in rigorous settlement negotiations with the aid of the mediator, Michael L. Russel, the Parties, with the assistance of counsel, agree that the negotiated terms of the settlement represent a fair, reasonable, and just compromise of disputed issues.

With compromise from both sides, the Parties reached the Settlement Agreement now before the Court. The negotiations leading to this settlement were adversarial, non-collusive, and conducted at arms' length. The Parties share an interest in fully and finally resolving the issues raised in this action. Because the Parties recognized the expense and risks associated with prosecution and defense through trial and any possible appeal, as well as the risk of uncertainty of the outcome inherent in any litigation, they agreed to be bound by the Settlement which

---

[1] https://www.morleynet.com/Services/Business-Process-Outsourcing/.

they now ask this Court to approve. The Parties have conditioned the overall Settlement upon the Court's approval of all their terms.

## III.
## SUMMARY OF THE SETTLEMENT TERMS

### A.     The Settlement Fund

The Settlement Agreement establishes a Total Settlement Amount to settle claims against Defendant (the "Settlement Fund").    Exhibit A, ¶ 7(b). The Settlement Fund covers eligible Settlement Class Members' awards, as well as attorneys' fees, costs, modest service awards for Named Plaintiffs, and third-party administrative fees and costs associated with allocation and disbursement of the settlement proceeds. *See id.*

### B.     Eligible Employees

The "Settlement Class" or the "Class" consists of all current or former employees of Morley employed as customer service representatives ("CSRs"), except those who were only paid (a) using the "Mo-Time" or Shift Planner self-reporting procedure or (b) who received "plug time," that were employed by Morley, anywhere in the United States, at any time from July 16, 2017 through the final disposition of this matter. Notwithstanding the foregoing exceptions, the Settlement Class includes all CSRs who have previously filed a consent to join this Lawsuit ("Named Plaintiffs and the Opt-In Plaintiffs") regardless of how they reported time but shall not include any person who either (a) never worked for

Morley, or (b) last worked for Morley before July 16, 2017. *See id.*, ¶ 1. There are currently 607 Plaintiffs and Opt-In Plaintiffs in this matter.

## C. Allocation Formula

Settlement Class Members will be paid their *pro rata* share of the Net Settlement Fund based on the number of weeks that they worked for Defendant during the class period.[2]

The Net Settlement Fund will be divided into equal shares based on the total number of workweeks worked by the Settlement Class during the Class Period, with each workweek equal to one-share of the Net Settlement Amount—that is, if the total weeks worked by the Settlement Class during the Class Period equal 100 workweeks, then each workweek would represent 1/100 [1-Share] of the Net Settlement Amount. If a Settlement Class Member timely returns a claim form after receiving Notice, they will receive a payment from the Net Settlement Fund equal to the total number of workweeks they worked during the Class Period as a CSR and were not paid via Mo-Time, Shift Planner, or Plug Time during that workweek, multiplied by one-share, except that no Settlement Class Member will receive less than $10.00 regardless of the number of total shares, if any. Defendant's records

---

[2] The Net Settlement Fund is calculated by deducting attorneys' fees, costs, service awards, and third-party administrator fees from the Total Settlement Fund. *See* Exhibit A, ¶ 7(a).

shall determine the total workweeks worked by the Settlement Class and the shares due the Settlement Class Members. *See* Exhibit A, ¶ 7(d).

## D.  Settlement Payments

Within fifteen (15) calendar days following the expiration of the notice period or within fifteen (15) calendar days after the total amount of claims submitted by the Settlement Class Members can be reasonably determined, whichever is later ("Funding Date"), Morley shall deliver via wire transfer to the third-party Settlement Administrator the total amount of the claims submitted, plus the Employer Payroll Taxes. The Settlement Administrator shall mail payments by check to all participating Settlement Class Members within ten (10) calendar days of the Funding Date. Settlement Class Members shall have ninety days (90) calendar days after the date of mailing to cash their respective settlement checks. Any uncashed checks after that date shall revert to Defendant.

## IV.
## ARGUMENT

### A.  Standard of Review

As a general rule, "court approval is required for the settlement of claims for back wages or liquidated damages under the FLSA." *Arrington v. Mich. Bell Tel. Co.*, 2012 U.S. Dist. LEXIS 157362, *1 (E.D. Mich. Nov. 2, 2012) (Lawson, J.) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). Therefore, "[w]hen employees bring a private action for back wages under

the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness. If the settlement is a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement in order to promote the policy of encouraging settlement of litigation." *Arrington*, 2012 U.S. Dist. LEXIS 157362, *2 (internal citations and quotations omitted); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d at 1354.

Courts often draw on Rule 23 case law to guide them in reviewing and approving FLSA settlements. The Sixth Circuit has identified seven factors that should aid courts in the determination of whether a proposed FLSA settlement is fair, reasonable, and adequate:

> (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of Plaintiffs' Counsel and class Representatives; (6) the reaction of absent class members; and (7) the public interest.

*Arrington*, 2012 U.S. Dist. LEXIS 157362, *2–3; *see also Crawford v. Lexington-Fayette Urban Cnty. Gov't*, CIV. A. 06-299-JBC, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008) *(citing Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). The above list is non-exhaustive, and courts do not necessarily apply all of the factors; rather, the factors are guideposts used to determine the fairness of a proposed settlement.

*See Arrington*, 2012 U.S. Dist. LEXIS 157362, *2–3 "A court applying these factors must do so in the context of the actual settlement." *Arrington*, 2012 U.S. Dist. LEXIS 157362, *3.

### 1.    The Absence of Fraud or Collusion in the Settlement

In the instant case, there is a *bona fide* dispute over whether Defendant violated the FLSA and relevant state law. Plaintiffs have alleged Defendant does not pay for all time that Plaintiffs and the Putative Class Members worked on its behalf.[3] Defendant denies Plaintiffs' allegations and maintains that it has properly paid Plaintiffs and the Putative Class Members for all hours worked.

There was no fraud or collusion in reaching this Settlement. The Parties engaged in extensive informal discovery and settlement was reached only through the assistance of a highly skilled and well-respected wage and hour mediator – Michael L. Russell. The Settlement will eliminate the risks and costs both sides would bear if this litigation continued to resolution on the merits. In agreeing upon the proposed Settlement, the Parties had sufficient information and conducted an adequate investigation to allow them to make an educated and informed analysis and conclusion.

---

[3] Specifically, Plaintiffs have alleged Defendant fails to pay them for their initial start-up time, time spent logging in (and out) for their lunch breaks, time spent completing calls post-shift, time spent trouble-shooting technical issues, and for time spent on short breaks lasting less than twenty (20) minutes.

## 2.    Complexity, Expense, and Likely Duration of the Litigation

In evaluating a proposed class settlement, the court also must weigh the risks, expense and delay the plaintiffs would face if they continued to prosecute the litigation through trial and appeal against the amount of recovery provided to the class in the proposed settlement. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003). Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement. *See e.g.*, *In re Telectronics Pacing Sys., Inc.* 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). For class actions in particular, courts view settlement favorably because it "avoids the costs, delays and multitudes of other problems associated with them." *Id*. at 1013.

Here, if not for the Settlement, the case would have continued to be fiercely contested by the Parties. Defendant, which is represented by capable and well-versed wage and hour counsel, has demonstrated the commitment to defend the case through trial and beyond trial, if necessary. The expense of continued litigation would be substantial as the Parties would have to complete a lengthy and extensive trial. Any trial would last more than one month, and involve numerous attorneys and witnesses; the introduction of voluminous documentary and deposition evidence; vigorously contested motions; and the expenditure of enormous amounts of judicial and counsel resources. Even if successful at trial,

there most certainly would be appeals which would deny the Class any recovery for years. Avoiding such unnecessary expenditure of time and resources clearly benefits all parties and the Court. *See Smith v. TradeGlobal, LLC*, No. 1:19-CV-192, 2020 WL 5797897, at *2 (S.D. Ohio Sept. 29, 2020) (recognizing that "[c]ontinued litigation would involve considerable expenditures of time and resources of the parties and the Court. If this case were to continue, the parties would expend significant time and money prosecuting the litigation through dispositive motions, trial, and possible appeals.").

The value of an immediate recovery here outweighs the mere possibility of future relief after protracted and expensive litigation.

### 3.    **Amount of Discovery Engaged in by the Parties**

The Parties have exchanged significant amounts of data regarding Plaintiffs and the Putative Class Members' claims. Further, Plaintiffs' Counsel has been in regular communication with members of the Settlement Class regarding their claims for unpaid start-up time, have reviewed hundreds of client documents, have conferred with the vast majority of the 607 Plaintiffs and Opt-In Plaintiffs before the Court to fully understand their claims, and have spent significant time and effort in the compilation of damage assessments for the Settlement Class Members. The Parties engaged in numerous meetings focused on attempting to resolve this case and ultimately participated in formal mediation. Plaintiffs' Counsel was well informed of the available damages and clearly understood the legal and factual

issues involved and were able to meaningfully engage in settlement negotiations with Defendant.

### 4. The Likelihood of Success on the Merits

Plaintiffs' likelihood of success on the merits and the amount they would be awarded is uncertain, further suggesting that this settlement is fair and appropriate. Plaintiffs assert, and Defendant denies, that they (and the Putative Class Members) are owed compensation due to Defendant's alleged violations of the FLSA. The range of possible recovery—if any—by Plaintiffs and the Putative Class Members is open to dispute. Even if Plaintiffs succeed on the merits of their claims, which would require substantial additional time and an exercise of resources by both sides, the specific amount of their recovery is uncertain, and may be as Defendant contends—*de minimus*. Thus, this proposed settlement is a fair and reasonable settlement in relation to the potential risks and recovery in this case.

### 5. The Opinions of Plaintiffs' Counsel and the Class Representatives

Plaintiffs' Counsel and Named Plaintiffs/Class Representatives are of the opinion that this proposed Settlement is a fair and reasonable compromise. *See* Declaration of Austin W. Anderson, attached hereto as Exhibit B, ¶ 14. Courts should generally "defer to the judgment of experienced counsel who [have] competently evaluated the strength of [their] proofs . . . ." *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983). Plaintiffs' Counsel here have extensive

experience in handling large nationwide FLSA collective actions (like this one) and they have thoroughly investigated and analyzed the claims alleged in these actions. *See id.* Moreover, Plaintiffs' Counsel have represented over 100,000 call-center employees in approximately forty (40) cases against call centers across the United States. *See id.* Based on their extensive experience with the applicable law, and the call-center industry specifically, they have made informed judgments regarding the Settlement and believe that they are fair, reasonable and adequate. *See id.*

### 6. <u>Whether the Settlement Is the Product of Arm's Length Negotiations as Opposed to Collusive Bargaining</u>

This lawsuit was initially filed July 16, 2020 as a hybrid collective/class action. *See* ECF No. 1. After filing, the Parties conferred in good faith and agreed to engage in an informal exchange of information in an effort to obtain an early resolution of this matter. Based on that agreement, the Parties sought and obtained a stay of the litigation to allow them to mediate this matter and subsequently scheduled a mediation with Michael Russel and mediation took place on December 7, 2020.

No settlement occurred until Plaintiffs' Counsel possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the results that could be obtained. The risks of non-recovery,

addressed above, were considered by Plaintiffs' Counsel in negotiating the proposed Settlement. Certainly, Plaintiffs would always like the Settlement Fund to be greater than it is, but those desires must be tempered against the risk of obtaining less (or nothing) if the case proceeded through trial (and appeal). Oftentimes, the best opportunity to resolve a case is when uncertainty over those still undecided issues remains for both sides.

Without evidence to the contrary, the Court may presume that settlement negotiations were conducted in good faith and that the resulting agreements were reached without collusion. *Telectronics,* 137 F. Supp. 2d at 1018 (citing *Newberg on Class Actions* § 11.51 (3d ed. 1992) ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.")). The Settlement in this case came after contested litigation and was a product of formal mediation. Far from collusion, the current settlement could only have been forged through arms' length negotiations.

## 7. <u>Whether the Settlement Is Consistent with the Public Interest.</u>

The final factor that the Court considers in evaluating a settlement is whether the settlement is consistent with the public interest. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th

Cir. 1992). This is particularly true when the substantive issues of the case "reflect a broad public interest in the rights to be vindicated or the social or economic policies to be established." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 307 (7th Cir. 1985). Here, it is certainly in the public interest to approve this Settlement. The Settlement resolves the claims of the Class in exchange for a fair return, eliminates the risk to the class of complete non-recovery, provides certainty to Defendant, and eases the burdens on the already heavily-taxed courts. In sum, given the complexity, expense, likely duration and risks of litigation, the state of the proceedings to date, the negotiations leading up to, and the ultimate terms of the Settlement, the proposed Settlement is fair, adequate and reasonable.

## B. The Settlement Is Fair and Reasonable and Should Be Approved

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc.,* 679 F.2d at 1355; *Wade v. Werner Trucking Co.*, No. 10 Civ. 270, 2014 WL 2535226, at *1 (S.D. Ohio June 5, 2014); *Bartlow v. Grand Crowne Resorts of Pigeon Forge*, No. 11 Civ. 400, 2012 WL 6707008, at *1–2 (E.D. Tenn. Dec. 26, 2012).[4]

---

[4] "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Bozak v. FedEx Ground Package Sys.*, No. 3:11-cv-00738-RNC, 2014 U.S. Dist. LEXIS 106042, at *3 (D. Conn. July 31, 2014). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores*, 679 F.2d 1354; *Gentrup v. Renovo Servs., LLC*, No. 07 Civ. 430, 2011 WL 2532922, at *2 (S.D. Ohio June 24, 2011); *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. 06-299-JBC, 2008 U.S. Dist. LEXIS 56089 (E.D. Ky. July 22, 2008).

Collective actions under Section 216(b) of the FLSA require workers to affirmatively opt-in to the litigation, unlike a class action pursuant to Federal Rule of Civil Procedure 23. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 73–74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."); *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009) ("While Congress could have imported the more stringent criteria for Collective certification under Fed. R. Civ. P. 23, it has not done so in the FLSA."); *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 594 (S.D. Ohio 2002) ("[I]n an FLSA "opt-in" collective action the requirements need not be strictly observed because there are no absent Class Members for the court to protect."). Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989), FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *Thompson v. Bruister & Assocs., Inc.*, 967 F. Supp. 2d 1204, 1222 (M.D. Tenn. Aug. 23, 2013). Accordingly, the exacting standards for approval of a Class action settlement under Rule 23 do not apply to an FLSA settlement under the collective action provisions of 29 U.S.C. § 216(b). *Crawford*, 2008 WL 4724499, at *3.

The FLSA Settlement in this case meets the standard for approval. The Settlement was the result of contested litigation with significant data exchanged between the Parties and arm's-length negotiations. Recognizing the uncertain legal and factual issues involved, the Parties reached the Settlement after mediation before nationally recognized wage and hour mediator, Michael L. Russel. At all times during the settlement negotiation process, negotiations were conducted at arms'-length. The Total Settlement Fund is substantial in light of the nature of the off-the-clock claims alleged by Plaintiffs and the Putative Class Members. The proposed allocation of the Settlement is also reasonable. It reflects the proportion of damages owed to each eligible Settlement Class Member based on their total workweeks of employment with Defendant during the relevant window of recovery.[5]

According to the Settlement, awards in this case will provide a significant recovery for the Settlement Class Members' claims. This Settlement constitutes a recovery for all Class Members and calculated to ensure appropriate proportionality dependent on the total weeks worked by each Settlement Class Member.

## C.    Attorneys' Fees and Costs Should be Approved

Defendant has agreed to pay the Plaintiffs' Counsel's attorneys' fees and costs as set forth in the Settlement Agreement. Specifically, Plaintiffs ask this

---

[5] July 16, 2017 through the present.

Court to approve an award of attorneys' fees of 1/3 of the Total Settlement Fund and actual litigation costs and expenses in the amount of $4,362.59. *See* Exhibit A, ¶ 7(b); Exhibit B, ¶ 15. Defendant does not object to the Court approving such an award of attorneys' fees and expenses.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir.1994), *cert. denied*, 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

The purpose of fee shifting statutes "is to induce a capable attorney to take on litigation that may not otherwise be economically viable." *Gascho v. Global Fitness Holdings, LLC*, 822 F. 3d 269, 280 (6th. Cir. 2016) (*citing Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (explaining that a "reasonable" fee is one that is "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case")). The standard for reviewing a request for attorney's

fees is reasonableness, *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 249 (S.D. Ohio 1991), and there is no specific numeric relationship required between the amount of economic losses recovered and the amount of fees recoverable. *See Fegley*, 19 F.3d at 1134–43 (6th Cir. 1994) (recognizing that an FLSA fee award "encourages the vindication of congressionally identified policies and rights").[6]

Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts. *Turner v. Perry Twp., Ohio*, No. 03 Civ. 455, 2005 WL 6573783, at *3 (S.D. Ohio Dec. 30, 2005) ("[T]he Sixth Circuit has emphasized the private attorney general theory of fee recovery: the importance of bringing [FLSA] cases, even if only nominal damages, are recovered to vindicate employee rights and Congressional policy").

In common fund cases "a reasonable fee is based on a percentage of the fund bestowed on the Collective[.]"*Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984);

---

[6] See *also Bozak*, 2014 WL 3778211, at *6 ("Fee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.") (internal quotes and citation omitted). Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA. *See Fegley*, 19 F.3d at 1134; *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974) (discussing "society's stake in rewarding attorneys who produce . . . benefits in order to maintain an incentive to others").

*Rawlings v. Prudential-Bach Props., Inc.*, 9 F.3d 513, 515 (6th Cir. 1993) (finding clear "trend towards adoption of a percentage of the fund method in [common fund] cases"); *Bessey v. Packerland Plainwell, Inc.*, No. 06 Civ. 95, 2007 WL 3173972, at *4 (W.D. Mich. Oct. 26, 2007) ("The fact that the damages which could have been claimed by each Collective member were relatively modest provides a strong reason for adopting the percentage of recovery method, for it rewards counsel for taking on a case which might not otherwise be economically feasible."); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 531–32 (finding application of "percentage-of-the-[common-]fund approach appropriate).

As here, a percentage of the fund approach fosters judicial economy by eliminating a detailed and time-consuming lodestar analysis. *Rawlings*, 9 F.3d at 516–17. This is an important feature because "the lodestar method is too cumbersome and time-consuming for the resources of the Court." *In re Cardizem CD*, 218 F.R.D. at 532 (citation and internal quotes omitted). The lodestar approach burdens a court with the task of reviewing extensive time records reflecting many hours of attorney time. *Rawlings*, 9 F.3d at 516–17. In contrast, the percentage of the fund approach is "easy to calculate" and it "establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery." *Id.* at 516. Crucially, "the percentage of the fund method more accurately reflects the results achieved." *Id.*

In applying the common fund method, courts award attorneys' fees as a percentage of the entire maximum gross settlement fund—and not as a percentage of the amount claimed—even where amounts to be paid to settlement class members who do not file claims revert to defendants. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 480–81 (1980) (stating that this approach "rectifies inequity by requiring every member of the Collective to share attorney's fees to the same extent that he can share the recovery"); *Moulton*, 581 F.3d at 352 (rejecting "objectors focus on the amount *claimed* rather than the amount *allocated*"); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436–47 (2d Cir. 2007) (holding that because the entire fund was created through the efforts of counsel, that the allocation of fees by percentage should be awarded based on the total funds made available, whether claimed or not); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-98 (11th Cir. 1999) ("In *Boeing Co. v. Van Gemert*, the Supreme Court settled this question by ruling that Collective counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed.") (quoting Herbert B. Newberg & Alba Conte, *Newberg on Collective Actions* § 14.03 (3d ed. 1992)); *Williams v. MGM-Pathe Commc'ns. Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (reversing district court's award of a percentage of the claimed fund and awarding attorneys' fees of a percentage of funds made available).

### 1.    <u>An Award of 1/3 of the Fund is Reasonable and Should Be Granted</u>

The central requirement for an award of fees is that it be reasonable. *See Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008); *Rawlings*, 9 F.3d at 516 ("In this circuit, we require only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances."); *Dillworth v. Case Farms Processing, Inc.*, No. 08 Civ. 1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (using reasonableness standard in FLSA context).  Plaintiffs request an award of one third (1/3) of the Total Settlement Fund as attorneys' fees.  Generally, contingent-fee arrangements are allowed, and sometimes even preferred, in many common-fund cases and further courts have found a contingent fee of 40% to be reasonable. *Duprey v. Scotts Co. LLC.*, 30 F. Supp. 3d 404 (D. Md. 2014); *Garcia v. Decalo Medical Group, LLC.*, No. 14-00301 2015 WL 9311984 (D. Md. Dec. 23, 2014); *Torres v. Gristede's Operating Corp.* 519 F. App'x 1 (2nd Cir. 2013).

The work that Plaintiffs' Counsel has performed in litigating and settling this case demonstrates their commitment to the FLSA Collective and to representing the Collective's interests and establishes the reasonableness of their fees. Plaintiffs' Counsel has committed substantial resources to prosecuting this case. The work that Plaintiffs' Counsel has performed—including investigating claims, reviewing documents, drafting the complaint, conferring with more than 600 clients, legal research, discovery, preparing for and attending mediation, and

negotiating the settlement terms and reducing them to a formal settlement agreement, was significant and contributed to the substantial recovery obtained on behalf of the Collective. *See Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595, 2012 WL 4760910, at *7 (S.D.N.Y. Oct. 5, 2012), (approving requested fee where "[t]he work that Collective Counsel . . . performed in litigating and settling th[e] case demonstrate[d] their commitment to the Collective and to representing the Collective's interests").

Here, Plaintiffs' Counsel has secured a substantial settlement on behalf of Plaintiffs and the Putative Class Members. Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting that the "most critical factor is the degree of success obtained"); *Rawlings*, 9 F.3d at 516 (stating that a percentage of the fund will compensate counsel for the result achieved); *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983).

Plaintiffs' Counsel's efforts to date have been without compensation, and their entitlement to be paid has been wholly contingent upon achieving a good result. *See Dillworth*, 2010 WL 776933, at *8 (citing as justification for recovery of percentage recovery from common fund "[t]he contingent nature of the fee agreement," which "meant that counsel bore the risk of receiving no fee in the

event that a less than favorable result was achieved").[7]

The fee requested by Plaintiffs' Counsel also is reasonable because they will continue to perform a significant amount of work on behalf of the Collective in implementing the Settlement and assisting with the administration of the Settlement Fund. Nonetheless, Plaintiffs' Counsel will not make a supplemental fee application. *See Bozak*, 2014 WL 3778211, at *8. Plaintiffs' Counsel anticipate that they will be required to spend a significant amount of additional time answering questions from eligible Settlement Class Members and ensuring that all reasonable steps are taken to ensure that to the extent any Class Members have moved since litigation commenced, that such Class Members are notified of the Settlement and receive their allocation of the Settlement Fund. Plaintiffs' Counsel take very seriously their continuing obligation to represent the Collective during the settlement approval process and the disbursement phase, which they will honor.

Plaintiffs' Counsel also have incurred out-of-pocket costs prosecuting this case, including costs for electronic research, court fees, postage and courier fees,

---

[7] *See also In re Se. Milk Antitrust Litig.*, No. 08 MD 1000, 2013 WL 2155387, at *3 (E.D. Tenn. May 17, 2013) (finding reasonable award of one-third of settlement fund; granting $52,866,667, in addition to previous award of $48,333,333); *Dallas*, 2013 WL 2197624, at *12 (preliminarily approving attorneys' fees of one-third of the settlement amount); *In re Packaged Ice*, 2011 WL 6209188, at *19 (noting that an award of "close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex Collective actions").

Plaintiffs' portion of the mediator's fees. Exhibit B, ¶ 15; *see Griffin*, 2013 WL 6511860, at *9 (approving payment of costs when "documented by firm and by category of expense . . . and appear reasonable"); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 535 (approving costs as "type routinely billed by attorneys to paying clients in similar cases"). In total, Plaintiffs' Counsel has expended $4,362.59 in litigation costs and expenses in this matter to date. *See* Exhibit B, ¶ 15. Accordingly, Plaintiffs' Counsel's request for attorneys' fees and reimbursement of actual costs is reasonable and should be approved.

## IV.
## CONCLUSIONS

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an order: (1) approving the settlement set forth in the Settlement Agreement; (2) approving the Service Awards for the Named Plaintiffs; and (3) approving Plaintiffs' Counsel Attorneys' Fees of 1/3 of the Total Settlement Amount and costs/administrative expenses of $4,362.59.

Dated: January 28, 2021

Respectfully submitted,

*/s/ Jennifer McManus*
Jennifer McManus (P65976)
FAGAN MCMANUS, P.C.
Attorneys for Plaintiffs
25892 Woodward Avenue
Royal Oak, Michigan
(248) 542-6300
jmcmanus@faganlaw.com

*/s/ Austin W. Anderson*
Clif Alexander
Austin W. Anderson
ANDERSON ALEXANDER, PLLC
Attorneys for Plaintiffs
819 N. Upper Broadway
Corpus Christi, Texas 78401
(361) 452-1279
clif@a2xlaw.com
austin@a2xlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2021, a copy of the foregoing document was filed electronically in the United States District Court for the Eastern District of Michigan. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Austin W. Anderson*
Austin W. Anderson